IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETWORK APPLIANCE INC,<br><br>    Plaintiff,<br><br>  v.<br><br>SUN MICROSYSTEMS INC,<br><br>    Defendant.                            / | No. C-07-06053  EDL<br>No. C-07-05488  EDL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO AMEND INVALIDITY AND INFRINGEMENT CONTENTIONS; GRANTING IN PART MOTION TO COMPEL; AND MODIFYING CASE SCHEDULE** |

**I.     MOTIONS TO AMEND CONTENTIONS**

Both Network Appliance, Inc. ("NetApp") and Sun Microsystems, Inc. ("Sun") seek to amend their infringement and invalidity contentions in these two related cases involving the parties' patents related to computer technology. Sun has filed two motions for leave to amend its infringement and invalidity contentions (one in the 6053 case and one in the 5488 case) and NetApp has filed one motion to amend its contentions in both cases. Sun also moves to compel certain depositions and to amend the schedule in the 5488 case. Discovery is now closed in the 6053 case for the amendments at issue. In the 5488 case, fact discovery is now closed, but the Court will allow certain limited additional discovery as set forth below.

    **A.     Legal Standard**

The parties agree that the Patent Local Rules that were in effect when this action was filed (effective January 1, 2001) govern this action, although the Court has noted that it will look to the current local rules for guidance. Under former Patent Local Rule 3-7, "Amendment or modification of the Preliminary or Final Infringement Contentions or the Preliminary or Final Invalidity Contentions . . . may be made only by order of the Court, which shall be entered only upon a

showing of good cause." These rules require the parties to provide early notice of their contentions and to proceed with diligence in amending those contentions when new information comes to light. Acco Brands, Inc. v. PC Guardian Anti-Theft Prods, Case No. 04-3526 SI, 2008 WL 2168379, *1-2 (N.D. Cal. May 22, 2008) (citing O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1366 (Fed. Cir. 2006)) (finding good cause, inter alia, where defendants had been "sufficiently diligent in bringing the new invalidity contentions to the attention of plaintiff and the Court" and plaintiff did not argue it would suffer prejudice). When considering what constitutes good cause, "this Court has examined such factors as the relevance of the newly-discovered prior art, whether the request to amend is motivated by gamesmanship, the difficulty of locating the prior art, and whether the opposing party will be prejudiced by the amendment." Id. (citation omitted).

"Unlike the liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the shifting sands approach to claim construction." Id. (citation and internal quotations omitted). Courts consider the moving party's diligence in deciding whether to allow amendment. Sunpower Corp. Systems v. Sunlink Corp., Case No. 08-2807 SBA (EMC), 2009 WL 1657987, *1 (N.D. Cal. June 12, 2009) (granting in part and denying in part motion for leave to amend invalidity contentions; noting that the critical issue is whether or not party exercised diligence in uncovering the newly discovered prior art). "If the parties were not required to amend their contentions promptly after discovering new information, the contentions requirement would be virtually meaningless as a mechanism for shaping the conduct of discovery and trial preparation." 02 Micro Int'l Ltd., 467 F.3d at 1366.

The old rule has since been modified. Revised Patent Local Rule 3-6 provides non-exhaustive examples of circumstances that may support a finding of good cause, consistent with caselaw under the prior rule:

> Nonexhaustive examples of circumstances that may, absent undue prejudice to the nonmoving party, support a finding of good cause include: (a) a claim construction by the Court different from that proposed by the party seeking amendment; (b) recent discovery of material, prior art **despite earlier diligent search**; and (c) recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, **despite diligent efforts**, before the service of the Infringement Contentions. The duty to supplement discovery responses does not excuse the need to obtain leave of court to amend contentions. Id. (emphasis added).

2

### B.     Sun's Motion for Leave to Amend Contentions in the 6053 Case

In its motion to amend in the 6053 case, Sun seeks to amend its final infringement contentions ("FICs") for United States Patent No. 5,749,095 ("the '095 patent") to address NetApp's non-infringement position and to include evidence obtained through the deposition of AMD, a third party. Sun argues that evidence from the July 7, 2009 deposition of AMD contradicts NetApp's new non-infringement theory. Sun seeks to serve supplemental FICs to establish the error of NetApp's theory.

Sun served its FICs on October 30, 2008. Sun asserted that certain limitations regarding completing write operations were practiced when an AMD opteron processor's core executed instructions that write to memory. Thompson Decl. ¶ 2. On June 29, 2009, NetApp's expert Stephen Keckler articulated a new non-infringement defense in his rebuttal report. Thompson Decl. ¶ 4. He opined that the limitations requiring completion of a write operation subsequent to a coherency operation were not infringed due to a feature called Store to Load Forwarding. Id. Sun maintains that Mr. Keckler failed to consider that this Store to Load Featuring (STLF) feature is only useable in very limited circumstances. Thompson Decl. ¶ 5. During the AMD deposition, the witness confirmed that certain write operations are not eligible for STLF, and that STLF is disfavored, among other things. Thompson Decl. ¶ 6. According to Sun, this rebuts NetApp's non-infringement opinion and is consistent with Sun's existing infringement contention.

Sun, however, accused AMD of infringement from the beginning of its case, but did not seek to depose an AMD witness until February 24, 2009. Corbett Decl. ¶ 4. Sun was not diligent in pursuing the AMD discovery. While Sun first identified AMD processors as infringing in February 2008 when it served its preliminary infringement contentions, it did not issue a subpoena to AMD until February 2009. Sun then waited until the Court-imposed deadline to file its motion to compel. Sun did not depose AMD's witness until July 2009. In addition, while Sun argues that it learned about the infringing features of the AMD processor at the AMD Rule 30(b)(6) deposition, it knew of at least some documents related to those features much earlier. For example, AMD's software optimization guide, an exhibit to Sun's preliminary contentions, describes the STLF feature. Beebe Decl. ¶ 6. As another example, the LOCK designation instructions are described in volume 2 of the

architecture programmer's manual, which is an exhibit to Sun's preliminary contentions. Id. ¶ 7.

Given the long period of time during which Sun first sought discovery from AMD and then conferred with AMD before moving to compel, Sun has not made a strong showing of diligence. In addition, it appears that Sun was aware of at least some aspects of the STLF features prior to the AMD 30(b)(6) deposition. Furthermore, amendment would be prejudicial to NetApp in light of the late stage of the 6053 case. Accordingly, the Court denies Sun's motion with respect to this amendment. However, Sun may still use discovery from AMD for other purposes, e.g., to impeach NetApp's expert witness.

Sun also moves to amend its contentions to include a new group of products released by NetApp in November 2008, after Sun served its FICs. Specifically, Sun moves to amend its FICs to add the new 3160 models as accused products. Sun notes that NetApp did not supplement its interrogatories to add those products until February 18 and March 4, 2009. Sun could not have included these products when it initially served its FICs. Further, NetApp does not claim that it would suffer any prejudice from amendment, and it would not need additional discovery should Sun amend its FICs. Accordingly, the Court grants leave to amend with respect to these new products.

### C.    Sun's Motion for Leave to Amend Contentions in the 5488 Case

Sun seeks to amend: 1) its final invalidity contentions for United States Patent No. 7,313,710 ("the '720 patent") with respect to one prior art reference, the SpinFS file system (a file system developed by Spinnaker Networks, Inc. and acquired by NetApp); 2) its preliminary invalidity contentions for United States Patent No. 6,574,591 ("the '591 patent") to include two newly discovered prior art references; and 3) its final infringement contentions for United States Patent No. 5,430,855 ("the '855 patent") to identify additional instances of infringement within the accused products. At this point in time, claims have been partially construed in the '855 and '720 patents, fact discovery is near completion, and expert reports are to be exchanged shortly. The discovery status is the same for the '591 patent, but no claims have been construed.

#### 1.    '720 patent final invalidity contentions

Based on a patent that issued to Spinnaker that describes features of SpinFS relevant to validity of the '720 patent, Sun charted SpinFS's product in its final invalidity contentions on

4

1  February 17, 2009.  NetApp subsequently produced the SpinFS source code, and Sun seeks to
2  amend its contentions based on that source code.  NetApp produced the code on March 30, 2009, a
3  few weeks before the close of fact discovery.  The parties continued to meet and confer about the
4  location of the source code, as Sun could not locate and analyze the source code without knowing in
5  which folder of the database it was located.  Corbett Decl. ¶ 5-7.  NetApp identified the path for the
6  location of the source code in the database on May 12, 2009.  Id. ¶ 8.  Sun and its experts reviewed
7  and analyzed the source code, finishing that analysis on July 3, 2009.  Zolotorev Decl. ¶ 3.

8  Because Sun sought the source code, which was not publicly available, before the close of
9  fact discovery, subsequently met and conferred, received the specific location of the code in May,
10 and then expeditiously inspected and analyzed the source code, Sun was diligent.  NetApp does not
11 identify any prejudice that would flow from this amendment.  Accordingly, the Court grants Sun's
12 motion as to this amendment.

13              2.      '591 patent preliminary invalidity contentions

14 Sun seeks to amend its invalidity contentions to add two references: 1) the '5,794,242 patent
15 or Spiralog patent; and 2) the Publication Fine Grained Mobility in the Emerald System.  In April
16 2009, while preparing for the deposition of Mr. Norman Hutchinson, a named inventor of the '591
17 patent, Sun's counsel located an article on Fine Grained Mobility in the Emerald System, of which
18 Mr. Hutchinson is an author.  Zolotorev Decl. ¶ 5.  Sun also received emails between Mr.
19 Hutchinson and NetApp that NetApp produced in advance of his deposition referencing a Spiralog
20 file system patent, which patent Sun seeks to include in its PICs.  Sun argues that it has been diligent
21 in seeking this amendment.  Sun also notes that assuming NetApp serves final infringement
22 contentions, it will be entitled to assert these references in its final invalidity contentions in any
23 event, and doing so earlier can only minimize any burden suffered by NetApp.

24 However, as NetApp notes, former Patent Rule 3-6 only allows an accused infringer to
25 amend its invalidity contentions without leave of court if it has a good faith belief that the Court's
26 claim construction so requires, and Sun cannot assume NetApp will amend its infringement
27 contentions.  In addition, Sun does not explain why it could not locate the prior art earlier prior to
28 preparing for Mr. Hutchinson's deposition.  Sun knew that Mr. Hutchinson is an inventor of the

5

patent, and the other prior art is a public article that he authored. In addition, while Sun generally argues that it could not flesh out the details of the Emerald System described in the publication without first deposing its author, Mr. Hutchinson, Sun failed to describe how Mr. Hutchinson's deposition was necessary for Sun to appreciate the relevance of the Emerald System as prior art. Accordingly, the Court denies Sun's motion with respect to this amendment.

### 3. '855 patent final infringement contentions

Sun served its preliminary infringement contentions for the '855 patent on April 10, 2008, and its FICs on January 26, 2009. Sun alleged that NetApp's products infringe this patent because they implement what NetApp calls disk right-sizing and truncation enhancements. Thompson Decl. ¶ 2. Sun's request to amend its contentions does not add new claims or products. Sun, however, wishes to add additional instances of infringement within the accused products, based on depositions of NetApp employees in late April 2009, and Sun's subsequent review of source code following those depositions. Specifically, Sun deposed Mr. Coatney on April 16, 2009, and Mr. Gillette and Mr. Grcanac on April 21 and 16, respectively. Sun argues that in preparing for these depositions, it attempted to identify source code regarding additional right-sizing and truncation. Thompson Reply Decl. ¶ 2. Sun notes that it needed to depose NetApp employees to confirm that the particular source code that it had access to was related to right-sizing and truncation. Id. ¶ 3. According to Sun, Mr. Coatney's deposition testimony went beyond the code, and he explained the way the product worked in a way not discernible from the code. Id. ¶ 4.

NetApp argues that Sun's discussion of diligence raises questions and is conclusory. NetApp notes that it made all of the source code that Sun now seeks to add available for inspection in May 2008. Beebe Decl. ¶ 2. NetApp maintains that the source code was fully searchable, and Sun did not need fact witness depositions to discover the files on the source code. The question of whether or not Sun was diligent in moving to amend boils down to whether or not it could have identified these additional amendments from the source code, which Sun had access to over a year ago. While Sun asserts in general terms that it needed employee depositions in order to seek amendment and that the source code is difficult to understand without witness testimony, Sun has not pointed to any specific deposition testimony to support its claim. Accordingly, the Court denies

6

Sun's motion with respect to this amendment.

### D. NetApp's Motion for Leave to Amend Contentions

In its motion, NetApp seeks to amend its invalidity contentions for the '630 patent in the 6053 case to include: 1) Dabecki (a written proposal presented at an IEEE 802.3z Gigabit Ethernet Task Force meeting) as an anticipatory and obviousness reference and to include SpectraLAN (a four-channel WDM technology) as an obviousness reference; and 2) VMSclusters reference and system related to the '787 patent in the 5488 case. NetApp also seeks to amend its invalidity contentions to include: 1) for the '012 patent in the 5488 case the Iceberg system as an on-sale bar; 2) for the '095 patent in the 6053 case Glew as an anticipatory and obviousness reference; 3) for the '857 patent in the 6053 case the RDF Manual as an anticipatory reference, Bartlett as an anticipatory reference, and Mann as an anticipatory and obviousness reference; and 4) for the '857 patent in the 6053 case incorporation of the chart provided in its expert reports to more explicitly chart the limitations anticipated or rendered obvious. NetApp also seeks to use certain references to provide additional evidence about the state of the field at the time of the invention of the '857 patent, and Sun does not oppose this request. NetApp places its proposed amendments into three categories: 1) references recently discovered by NetApp; 2) references that provide specific examples to further explain previously identified systems and art; and 3) references or invalidity grounds where the objections are unsupported by the patent local rule requirements.

#### 1. References Recently Discovered by NetApp

As to the recently discovered references, NetApp argues that its amendments should be granted for the same reasons noted by the Court in Golden Hour Data Systems, Inc. v. Health Services Integration, Inc., Case No. C 06-7477 SI, 2008 WL 2622794 (N.D. Cal. July 1, 2008). In the Golden Hour case, the Court allowed certain amendments, because the party seeking amendment was not motivated by gamesmanship, the amendments did not raise new issues but rather supplemented its initial contentions, the opposing party was on notice of the substance of the proposed amendments, three additional months remained in the fact discovery period and expert discovery had not yet begun. Id. at *4. Because the cases here are at a much more advanced stage and amendment is correspondingly more prejudicial, however, Golden Hour is distinguishable.

7

                    a)       6053 Case

As noted above, fact discovery has closed and expert reports have already been exchanged in the 6053 case. NetApp seeks to amend its contentions for the '630 patent in the 6053 case to include Dabecki as an anticipatory and obviousness reference. That reference is a written proposal presented at an IEEE task force meeting. Beebe Decl. ¶ 16. The reference was archived within a particular publicly available internet database and produced by Sun as part of a 200,000 page production on April 6, 2009. Beebe Decl. ¶ 17. In December 2007, NetApp issued its document requests for communications with standard setting bodies. NetApp explored the reference at the deposition of Shimon Muller on April 20, 2009. Beebe Decl. ¶ 18. Four days later, NetApp identified Dabecki as material prior art in its supplemental interrogatory responses. Id. NetApp argues that there is no prejudice, as Mr. Muller was at the task force meeting where the relevant proposal was discussed and Sun contributed to the situation by failing to produce the reference.

Dabecki, however, is easily accessible on the internet, as it is publicly available on the IEEE website under materials related to the 802.3z task force. Corbett Decl. ¶ 9. NetApp was aware that the IEEE 902.3 standard may be relevant to the patent as early as August 2008. Corbett Decl. ¶ 10 (noting that on Aug 1, 2008 NetApp served a subpoena on Ariel Hendel, an inventor of the '630 patent requesting the production of documents relating to the IEEE 802.3 standard). Sun would also be prejudiced by amendment in this case, as fact discovery is closed and expert reports have been exchanged. On balance, given the late stage of the 6053 case, the fact that Sun can no longer subpoena Mr. Dabecki, and the publicly available nature of this reference, the Court denies NetApp's motion as to this request.

NetApp seeks to amend the same invalidity contentions to include SpectraLAN as an obviousness reference. NetApp discovered this reference through an email written by Shimon Muller that referenced a four-channel WDM. Beebe Decl. ¶ 20. NetApp questioned Mr. Muller about this email at his second deposition on April 20, 2009, and he testified that Hewlett Packard's four-channel WDM approach was similar to concepts in the '630 patent. As a result, while Mr. Muller did not identify SpectraLAN directly, NetApp determined that SpectraLAN disclosed limitations of the asserted claims of the '630 patent, and disclosed this in its April 24, 2009 updated

interrogatory responses.

There are actually three separate SpectraLAN references (including an article published by Brian A. Lemoff, et al. ("Lemoff reference") and a presentation by David Dolfi at an IEEE Meeting on March 9-10, 1999 ("Dolfi reference")). Sun points out that NetApp obtained the email from Shimon Muller in September 2008, nearly ten months ago. Corbett Decl. ¶ 12. However, as NetApp noted at the hearing, that email was not produced in readable form until after Mr. Muller's first deposition, which took place on October 7, 2008.

Even assuming NetApp did not have the email in readable form, the SpectraLAN system has been in public use since December 1997. Corbett Decl. ¶ 14, Ex. D. The Dolfi reference was presented at an IEEE 10 gigabit ethernet meeting in March 1999 and is available to the public on the IEEE website. As to prejudice, Sun notes that its expert has not evaluated the SpectraLAN references, and the parties have already exchanged expert reports in this case. On balance, even though NetApp was somewhat diligent, given the late stage of the 6053 case and the resulting prejudice, the Court denies NetApp's motion as to this request.

                    b)       5488 Case

NetApp argues that the VMSclusters reference and system were recently discovered. NetApp notes that it already disclosed the prior art system VAXcluster, and that VMScluster is a later version of that system. See Beebe Decl., Ex. 11. NetApp learned of VMScluster from reviewing a document in preparation for the deposition of Greg Slaughter. That document was produced on March 3, 2009. Following Mr. Slaughter's deposition on April 3, 2009, NetApp issued a subpoena to HP seeking discovery on these prior art systems. NetApp obtained the VMSclusters manual when HP produced it on April 22, 2009. Beebe Decl. ¶ 25. NetApp disclosed the manual with a claim chart to Sun on May 27, 2009.

Sun argues that NetApp should have known of the operating system in February 2009, because the reference found and relied upon NetApp at that time explicitly describes the VMS operating system. However, the fact that a VAXcluster book mentions a VMS operating system did not put NetApp on notice that the distributor called later editions of VAXcluster by a different name. While Sun argues that NetApp did not need to wait until Mr. Slaughter's deposition to subpoena the

9

documents from HP, NetApp's delay in doing so was minimal. In addition, NetApp argues that the prejudice of amendment is minimal here, because of the overlap between this reference and the previously disclosed prior art. For these reasons, the Court grants NetApp's motion as to this amendment.

NetApp argues that it confirmed that the on-sale bar applies to the '012 patent in the 5488 case following the depositions of Robert Walsh on March 31, 2009 and Jay Belsan on April 2 and 3, 2009. The bar is based on the Iceberg system sold by Storage Tek, which was acquired by Sun. Prior to the depositions, NetApp did not have information on which features were included in older versions of Iceberg. NetApp contends that those depositions revealed that the earlier versions contained claimed features, which prompted NetApp to seek additional discovery from Sun. On May 27, 2009, NetApp informed Sun about its on-sale bar theory.

NetApp, however, deposed Alan Permut, an '012 inventor, on November 13, 2008 and explored the commercial release of Iceberg during that deposition, although he apparently did not know when Iceberg was released. Corbett Decl. ¶ 21; Beebe Decl. ¶¶ 28-29. In addition, NetApp has not pointed out what specific deposition testimony by either Walsh (not a named inventor on the patent) or Belsan (a named inventor on the patent) confirmed when the Iceberg system was officially released. As Sun notes, those depositions are vague as to the release of Iceberg and do not appear to confirm the on sale bar defense. See Corbett Decl. ¶¶ 22-23; see also id., Ex. H at 78 (Belsan depo ) ("I don't know the date" when Iceberg was released commercially – guessing maybe 1993 or 1994). In addition, requiring Sun to investigate and develop its defense at this late juncture would be prejudicial. In light of the prejudice to Sun and NetApp's failure to show what facts in the depositions of Messrs. Walsh and Belsan support its on-sale bar contention, the Court denies NetApp's motion as to this amendment.

        2.        References Related to Systems/Art Previously Identified to Sun in 6053 Case

NetApp seeks to amend its invalidity contentions for the '095 patent to include Glew as an anticipatory and obviousness reference. Glew is a patent that describes technology embodied by Intel's Pentium Pro system. NetApp identified references to that Intel system as part of its invalidity contentions in March 2008. It then provided the same material regarding Glew to Sun on May 27,

10

2009.

The Glew patent is publicly available, and NetApp has not demonstrated any diligence on its part. Rather, it argues only that Sun will not be prejudiced by amendment, because of Glew's similarity to the previously disclosed Pentium Pro system. Sun, however, notes that equating Intel's Pentium Pro system and Glew is misleading, because there are many differences between the two. As one example, Glew describes eviction schemes absent in the pentium pro. Thompson Decl. ¶ 2. Given NetApp's failure to demonstrate diligence and the late stage of this case, the Court denies NetApp's motion with respect to this amendment.

NetApp also seeks to amend its contentions to include the RDF Manual as an anticipatory reference for the '857 patent. In March 2008, NetApp identified and disclosed the Tandem RDF system. NetApp sought additional discovery from HP about this system, and HP produced it to NetApp on April 22, 2009. HP, however, also produced this manual in response to Sun's subpoena around February 2009. At the hearing, NetApp acknowledged that it probably received the Manual from Sun in February or perhaps March, 2009.

NetApp argues that this amendment does not prejudice Sun because the RDF Manual merely provides a more understandable explanation of the Tandem RDF system. Similarly, NetApp wants to amend its contentions to add a Bartlett reference. However, NetApp does not support its argument that the new references are similar to Tandem RDF, and Sun points out that NetApp's prior identification of Tandem RDF compared a short five page article by Lyon with the patent, whereas the RDF Manual is 64 pages and the Bartlett reference is 66 pages. Both references, therefore, cover material beyond what is in the Lyon article.

As to diligence, the Bartlett reference is available on HP's website. Regarding the RDF Manual, NetApp did not seek discovery from HP about the Tandem RDF system until April 3, 2009, despite having identified it in its March 2008 invalidity contentions. Corbett Decl. ¶ 20. In light of NetApp's lack of diligence and the late stage of this case and prejudice to Sun, the Court denies NetApp's motion as to this amendment.

NetApp also seeks to amend its contentions for the same patent to include Mann as an anticipatory and obviousness reference. This reference was disclosed in NetApp's March 2008

11

contentions, listed as another supporting reference. NetApp's expert report adds a chart identifying where each element of the claims exists within the reference. Beebe Decl. ¶ 37. Because NetApp disclosed the reference in March 2008, it was clearly aware of it then. Merely listing the reference as a supporting reference is not equivalent to providing an invalidity claim chart for that reference, as required by Patent LR 3-3(c). Because NetApp did not properly chart out the details of this reference and has not explained why it failed to do so, NetApp's motion is denied with respect to this amendment.

The parties also dispute whether NetApp's contentions regarding the '987 patent were sufficiently explicit. NetApp seeks to amend its invalidity contentions for this patent to more explicitly chart the limitations anticipated or rendered obvious. NetApp listed the '987 patent as a supporting reference, but failed to chart it as required by the local rules. Moreover, Sun notes that the two patents have different purposes and claims. Accordingly, NetApp's motion is denied with respect to this amendment.

Finally, certain documents only provide details of release dates or a general overview of commonly available features, and do not represent a shift in NetApp's invalidity theories. Namely, two textbooks, Coulouris and Mullender, provide examples of the common use of a primary backup replication approach, similar to a textbook already included in NetApp's invalidity contentions. Three specifications (for RFC 1094, SCSI, and FTP) provide support for the fact that error status codes were recognized within the field and often included in specifications. Finally, the System/360 reference is additional evidence that non-operational device error signals were known in the field at the time of the invention of the '857 patent. Sun does not dispute the use of these references for the purpose of establishing when certain features were available, so long as NetApp does not use these references to prove elements of a claim. Accordingly, NetApp may use these references for this agreed upon purpose.

## II. SUN'S MOTION TO COMPEL

Sun also moved to compel NetApp to produce witnesses for deposition and to amend the 5488 case schedule. For the reasons stated at the hearing, Sun's motion is granted as follows. The following depositions may proceed: Jonathan Schwartz (3 hours), Dan Warmenhoven (3 hours),

Noreen Krall (3.5 hours), David Hitz (7 hours), '385 patent inventors concerning conception and reduction to practice (4 hours for employees; 2 hours for non-employees), Miroslay Klivansky (7 hours), Eric Gumtow (7 hours), Pradeep Kalra (7 hours), Arthur Lent (7 hours), Tomislav Grcanac (4 hours), Rod Pardola (7 hours), Richard Lukens (7 hours), Val Bercovici (7 hours), Gary Ross (personal and Rule 30(b)(6) deposition), Alex Petruncola (2 hours), Lynn Roher (7 hours), Sally McDonald, depositions regarding RLM and NetApp's new licensing defense, Steve Miller (14 hour Rule 30(b)(6) deposition), Richard Jernigan (10 hour combined Rule 30(b)(6) and personal deposition), Steve Strange (14 hour Rule 30(b)(6) deposition), Norman Hutchinson (4 hours), James Graziano (7 hours) and Andy Bechtolscheim (4 hours). Sun should also allow NetApp to take any additional depositions that it reasonably requests.

Sun's motion to amend the 5488 schedule is granted as agreed to the parties at the hearing. Technical depositions must be completed no later than September 25, 2009. Opening expert reports are due October 12, 2009. All fact discovery must be completed by October 16, 2009. All rebuttal expert reports must be completed by November 2, 2009. The parties shall file their opening summary judgment briefs by November 23, 2009. Responsive briefs are due December 7, 2009, and reply briefs are due December 21, 2009. The Court will hold a hearing on Sun's patents on January 20, 2010 at 2:00 pm and on NetApp's patents on January 27, 2010 at 2:00 pm.

## III. CONCLUSION

As agreed to at the hearing, in the future, the parties will submit a joint two-page letter to the Court when a discovery dispute arises for which Court intervention appears necessary, proposing how the Court should handle the relevant discovery dispute.

///
///
///
///
///
///
///

13

In light of the foregoing, it is hereby ordered that the motions to amend infringement and invalidity contentions are DENIED in part and GRANTED in part; Sun's motion to compel is GRANTED in part; and the 5488 case is modified as stated above.

**IT IS SO ORDERED.**

Dated: August 31, 2009

ELIZABETH D. LAPORTE
United States Magistrate Judge