IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUN MICROSYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> NETWORK APPLIANCE, INC., <br><br> Defendant. | No. C-07-05488 EDL <br><br> **ORDER REGARDING JOINT BRIEF REGARDING NOVEMBER 18, 2009 JOINT LETTER REGARDING SUN'S REQUEST FOR ADDITIONAL 30(B)(6) DEPONENT** |

On November 18, 2009, the Court received a two-page joint letter brief from the parties regarding a dispute over Sun's demand for an additional 30(b)(6) witness to testify about NetApp's first offer for sale of products that practice the '720 patent. Sun contended that NetApp's initial deponent, Mr. Hitz, was unqualified to testify about, among other things, a NetApp-Hitachi Agreement and whether it constituted a first offer for sale of DataONTAP 9 ("DOT") 6.4. Sun argued that additional information on this topic is necessary for it to determine whether it has grounds to seek leave to amend its invalidity contentions to asset an "on-sale bar" defense to the '720 patent. NetApp countered that the request was untimely and outside of the scope of the deposition notice, and Sun had adequate information months ago to determine whether to assert the defense. The Court determined that it did not have enough information to decide the dispute, and allowed an expanded joint brief on the topic, which the parties have now filed.

Sun argues that there is no dispute that DOT 6.4 was the first product to practice the '720 patent, that the NetApp-Hitachi Agreement identifies the operating system subject to the agreement as "Network Appliance Data ONTAP, 6.4 (TBD)," and that the NetApp-Hitachi agreement was signed in December 2002 (more than one year prior to the February 12, 2004 filing date of the '720-patent). The question is whether the NetApp-Hitachi Agreement constituted an offer for sale. Mr.

1 Hitz testified that his "hunch would be that the product first shipped spring of 2004," but had no
2 direct knowledge of the NetApp-Hitachi Agreement, what the "TBD" meant, or whether the
3 agreement was an offer for sale of the functionality of the '720 patent.

4 Sun also contends that it initially sought a deposition on the first offer for sale and sale of the
5 first product to practice the '720 patent in November 2008, but no deposition was held until
6 September 2009. Additionally, Sun claims it sought production of the NetApp-Hitachi Agreement
7 in February 2009, that it received unsigned drafts in April 2009 (but there is no evidence these drafts
8 were provided to Hitachi), but did not receive a signed copy until October 7, 2009. Sun claims it
9 was waiting for the final version of the Agreement to see whether it contained the "TBD" reference.
10 Because the signed agreement contains the "TBD" reference, and because Mr. Hitz could not
11 explain this, Sun now contends that it needs further deposition testimony to explain the reference
12 and whether DOT 6.4 was sold or offered for sale as part of the NetApp-Hitachi Agreement before it
13 knows if it has a viable on-sale bar defense.

14 NetApp counters that Sun's claim that it needs additional discovery before asserting an on-
15 sale bar defense is untimely and inconsistent. NetApp contends that Sun has had the information
16 needed to determine whether to further amend its invalidity contentions for months for several
17 reasons. First, Sun had a draft of the Hitachi agreement in April 2009 which was identical to the
18 final version it now relies on (other than the signature).[1] Additionally, Manish Goel testified during
19 an April 2009 deposition that the agreement was signed in December 2002 and, according to
20 NetApp, Sun could have, but did not, question Mr. Goel further about the agreement. However, Sun
21 points out that Mr. Goel testified that he did not know which version of DOT would be sold with the
22 Hitachi product, so it could not have obtained the information it now seeks from him.

23 NetApp also argues that the NetApp-Hitachi Agreement contemplates a future product to be
24 sold by Hitachi, and is not a commercial offer for sale. It contends that the agreement was focused
25 on hardware, not software, as evidenced by vague reference to a future version of the software. It

---

[1] Neither party addresses whether Sun was ever told that the draft agreements were identical to the final, signed agreement prior to obtaining the signed version in October 2009. However, even if it was told this, Sun would have a reasonable argument that it could not take NetApp's word for this fact in deciding whether to assert the defense.

2

1  contends that Sun's position that it sought discovery earlier because it believed the NetApp-Hitachi
2  Agreement could constitute an offer of sale is inconsistent with its current position that it still needs
3  more discovery to determine whether to assert the defense now.  According to NetApp, Sun should
4  have sought leave to amend to assert the defense during the omnibus contention amendment process
5  in July 2009, and allowing it to do so now will prejudice NetApp by reopening discovery and
6  expanding the case.  However, Sun states that no further discovery will be needed.

7  Having considered the parties' arguments, the Court GRANTS Sun's request.  Sun could not
8  rely on a draft agreement containing "TBD" language, that may not have ever been shared with
9  Hitachi, to know whether DOT 6.4 was actually offered for sale in the NetApp-Hitachi Agreement,
10 and needed to see the final agreement.  Neither Mr. Hitz's nor Mr. Goel's testimony adequately
11 explains the TBD reference or whether the agreement was an offer for sale of DOT 6.4.  The Court
12 will therefore allow Sun a very limited additional deposition of no more than two hours, unless good
13 cause for additional time is shown, on the topic of the whether the NetApp-Hitachi Agreement was
14 an offer for sale of DOT 6.4, including what the "TBD" reference meant.  Other than this limited
15 deposition, no further discovery on the topic of an on-sale bar defense to the '720 patent will be
16 allowed.  See Joint Brief at n.4 (Sun agrees that "[n]o additional discovery is required").

17 **Request to Seal Portions of the Joint Brief and Exhibits**

18 Along with the joint brief, NetApp has filed a request to seal portions of the joint brief and
19 certain of the exhibits attached thereto because they have been designated Highly Confidential under
20 the Stipulated Protective Order.  Specifically, NetApp seeks to seal the NetApp-Hitachi Agreement
21 (attached to the joint brief as Exhibit 1), a Hitachi-NetApp Announcement FAQ document (attached
22 as Exhibit 2), excerpts of the deposition transcript of Manish Goel (attached as Exhibit 4), and
23 limited portions of the joint brief that quote these documents.  NetApp testifies that these documents
24 contain sensitive business information that could harm NetApp if publicly disclosed.  See generally
25 Declaration of Patricia Young in Support of NetApp's Motion For Administrative Relief to File
26 Under Seal the Parties Joint Brief Regarding November 18, 2009 Joint Letter Regarding Sun's
27 Request for a Rule 30(b)(6) Deponent and Exhibits 1, 2 and 4 Thereto.  Sun has not opposed the
28 request.  Given that the information sought to be sealed contains confidential business information

3

and was previously designated Highly Confidential without objection, and because Sun does not oppose NetApp's limited request, there is good cause for sealing the requested documents or portions thereof.  The request to seal is therefore GRANTED.

**IT IS SO ORDERED.**

Dated: December 11, 2009

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge